225 A.2d 218.

KAISER ALUMINUM & CHEMICAL CORPORATION *vs.* ANTHONY BOTTIGLIERI.

DECEMBER 30, 1966.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

502

PAOLINO, J. This is an employer's petition to review a decree of the workmen's compensation commission under which the respondent was receiving compensation for partial incapacity. The case is here on the respondent's appeal from a decree of the full commission affirming the decree of the trial commissioner finding that the respondent had recovered from the effects of his injury and suspending the payment of all benefits.

On March 30, 1959 respondent suffered a compensable injury while working for petitioner as a "single spooler operator" and on June 15, 1959 the parties entered into a preliminary agreement providing for the payment of total incapacity benefits commencing on April 3, 1959 for the duration of total incapacity. The agreement states the nature and location of the injury as "Ruptured disc, L-5 S-1 left side" and alleges that at the time of the injury his average weekly wage was $91.17.

Sometime thereafter petitioner filed a petition to review respondent's capacity for work. This proceeding was designated as W.C.C. No. 62-0724. After a hearing the trial commissioner entered a decree on July 12, 1962 finding that although respondent was no longer totally incapacitated as a result of his injury he was still partially incapacitated therefrom. The decree, which was not appealed, ordered

petitioner to pay partial compensation in accordance with the act.

The evidence shows that during the period of his partial disability respondent had at times worked as a bartender in a cafe owned by his wife. In December 1964 petitioner offered respondent a choice of two jobs. He selected a job described as "non-metallic braider" and on January 4, 1965 he started to work for petitioner but also continued working as a bartender. Then on February 12, 1965 he stopped working for petitioner but continued with his work as a bartender.

On March 22, 1965 petitioner filed the instant petition to review the July 12, 1962 decree. The petition alleges that petitioner has fully complied with all outstanding agreements or orders to date; that respondent's compensable incapacity for work has ended; that he is able to perform work at an average weekly wage equal to or in excess of that which he was earning at the time of his injury; and that he failed to make a bona fide effort to perform suitable work provided by petitioner at an average weekly wage equal to or in excess of that which he was earning at the time of his injury.

The trial commissioner heard the petition on April 21, May 21 and May 24, 1965 and entered an interlocutory decree on July 21, 1965 predicated on a decision filed by him on July 16, 1965. The decree contains the following finding:

"That the respondent is able to do the duties required of a 'non-metallic braider operator' which is available to him and which has been offered to him by the petitioner for the normal work week."

On the basis of such finding the decree contains the following orders:

"1. That the respondent shall report to the petitioner's plant on Monday, July 26, 1965, (if he has not already done so) at the usual hour for reporting

for work ready to perform the duties of a non-metallic braider operator;

"2. That the respondent shall in good faith attempt to perform such duties upon reporting for work;

"3. That in the event respondent reports for work and does not earn wages equal to, or in excess of his average weekly wage, petitioner shall pay benefits at the rate of 60% of the difference between his actual earnings and such average weekly wage but not more than $22.00 per week;

"4. That in the event respondent does not report for work on such date, viz: July 26, 1965, petitioner may suspend payment of benefits;

"5. That jurisdiction of this matter is retained; that this decree is entered as an interlocutory decree; and said cause is continued for further hearing on August 26, 1965, at 9:30 A.M."

On June 8, 1965 respondent returned to the non-metallic braider job and continued to work for petitioner until the latter's vacation period commenced August 1, 1965. When the plant resumed operations on August 16, 1965 respondent did not return to work but sent in a note stating that he would like to have two extra weeks which he needed for business reasons. The petitioner terminated respondent's services for disciplinary reasons following the end of the two-week period.

On September 2, 1965 the commissioner resumed hearings on the petition. The respondent admitted that he continued to work at the cafe during the vacation period and thereafter. The reason he gave for not returning to work on August 16, 1965 was that he wanted to take out his wife. The petitioner's payroll supervisor testified as to the number of hours and actual wages earned by respondent in the period June 8, 1965 to August 1, 1965. Also in evidence is the record of his wages and hours in petitioner's employ for the period of the week ending January 10, 1965 to the week ending February 14, 1965.

On September 27, 1965 the commissioner filed a further decision in which he stated that he had heard no testimony to change the "feelings and opinions" set out in his prior decision on July 16, 1965. He also stated: "This is the type of case that requires the fixing of respondent's earning capacity in money value." He found that respondent had recovered from the effects of his injury to the extent that he was able to do the work of a non-metallic braider operator and to earn the sum of not less than $95.48 weekly. On September 29, 1965 he entered a decree predicated on his decision ordering petitioner to suspend payment of all benefits to respondent.

After hearing and considering the appeal of respondent the full commission filed a decision in which they reviewed the material evidence as well as the decision and decree of the trial commissioner. They concluded that the preponderance of the evidence supported the findings made by the trial commissioner and on January 17, 1966 entered a decree affirming the findings of fact and orders contained in the trial commissioner's decree.

We first consider respondent's contention that the trial commissioner committed reversible error in granting relief because petitioner failed to prove an essential allegation in its petition, namely, that it fully complied with all outstanding agreements or orders to the date of the petition, in accordance with the provisions of G. L. 1956, §28-35-53, which reads as follows:

> "The employer shall not be entitled to any relief granted by §§28-35-39 to 28-35-52, inclusive, if payments in accordance with the existing agreement or decree are not paid in full to the date of the filing of the petition or notice or the date of the hearing before the commission or if payments are not made in accordance with the terms of chapters 29 to 38, inclusive, of this title."

On the last day of the hearing before the trial commissioner respondent's then counsel raised this question in the

following manner. While petitioner's counsel was examining one of its witnesses on redirect examination, respondent's counsel interrupted the questioning and made the following statement: "It has been brought to my attention just now he has not been paid compensation in accordance with any of the decrees. He has not been paid compensation since April 20, 1965. He does not seem to have been paid compensation for a period of time on varying partial under the decree of Your Honor since July of 1965. I am bringing it to the Court's attention so that the court will not let the petitioner go forward with the petition."

After petitioner's counsel assured the commissioner that "Anything that may be due him will be paid," the commissioner told him he could proceed with his questioning of the witness and noted the exception of respondent's counsel.

We reaffirm the rule enunciated in *Hingeco Mfg. Co.* v. *Haglund,* 65 R. I. 218, that an employer who is in default in payments cannot receive affirmative relief freeing itself from obligation from making further payments. But in *Hingeco, supra,* it was clear that when the petitioner asked for affirmative relief from the payment of future compensation to the respondent, the employer had intentionally failed to obey the provisions of an existing agreement by stopping payment without first obtaining a modification of the agreement from the proper tribunal. The court expressly pointed out that the employer was asking for affirmative relief when it was clearly in default and had failed to offer to pay any unpaid compensation that might actually have been due to the injured employee.

We agree with employee's argument that under §28-35-53 the burden of proof is on a petitioning employer to sustain the allegations in its petition. But the *Hingeco* rule must be applied reasonably and realistically. In the case at bar petitioner not only alleged compliance, but when this question was raised at the hearing its counsel stated unequivo-

cally that anything that may be due the employee will be paid. Although respondent presented no evidence to contradict petitioner's allegation that it had complied with all outstanding agreements or orders to the date of the petition, it is reasonable to assume that implicit in the commissioner's statement that petitioner proceed with the hearing was a direction "to pay any unpaid compensation that might actually have been due to the injured employee," *Hingeco, supra,* at page 222, or else be denied the affirmative relief it was seeking. See *Olbrys* v. *Chicago Bridge & Iron Co.,* 89 R. I. 187, 192.

Other than the taking of an exception, there is nothing in the transcript indicating that respondent pressed this question any further.

On the record we cannot say that petitioner failed to sustain its burden of proof. We find no error in the trial commissioner's action.

We cannot agree with respondent's contention that the trial commissioner erred in finding that he was able to do the work of a non-metallic braider operator. It is clear from a reading of his decision that the trial commissioner relied on the testimony of the medical witnesses, Dr. Louis A. Sage and Dr. G. Edward Crane, and on the latter's medical report. Doctor Sage, who had been respondent's attending physician since the occurrence of his injury, testified in effect that although respondent could perform the duties of a non-metallic braider operator, he could not do that work and the work of a bartender at the same time.

Doctor Crane's report of his examination of respondent on November 12, 1964 concludes with the following statement: "I would say this man has obtained a real good result following his spinal funsion [sic] and I believe now that he has reached the point where he should be able to attempt to do his regular work."

We cannot escape the conclusion that the trial commissioner was also influenced by the evidence relating to the

respondent's work as a bartender in his wife's cafe. A fair reading of his decision shows that he gave no weight to the respondent's testimony that he was unable to do the job offered him. In our opinion the credible evidence supports the finding that he was able to do such work. This is equivalent to a finding that his incapacity for work had terminated and is dispositive of the issue. In the circumstances we do not reach and therefore do not deem it necessary to consider respondent's contention that the trial commissioner misconceived the law by stating: "This is the type of case that requires the fixing of respondent's earning capacity in money value."

The full commission found that the preponderance of the evidence supported the findings of the trial commissioner and entered a decree affirming the same. We agree.

The respondent's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the workmen's compensation commission for further proceedings.

*Carroll, Kelly & Murphy, Ambrose W. Carroll,* for petitioner.

*Abedon, Michaelson, Stanzler & Biener, Richard A. Skolnik,* for respondent.